UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TONY LEE KELLY | CIVIL ACTION NO. 07-1563 |
| VS. | SECTION P |
| DETENTION CENTER, FRANKLIN PARISH | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on September 14, 2007, by *pro se* plaintiff Tony Lee Kelly. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Caldwell Corrections Center, Grayson, Louisiana; however, he complains of conditions of confinement at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana. The only defendant named in this suit is the FPDC and the original complaint requests no specific relief. (In a subsequent pleading which has been construed to be an amended complaint, plaintiff has requested $1000 in damages, early release and transfer to another facility. see doc. 7, p. 3) This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

*Statement of the Case*

Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and

1

Corrections.  He was incarcerated at the Franklin Parish Detention Center for the six month

period from April 17, 2007 [See doc. 4; see also *Tony Lee Kelly v. Natchitoches Parish*

*Detention Center*, No. 1:06-cv-1397 at doc. 14] until October 9, 2007, when he was transferred

to his present place of confinement,  the Caldwell Corrections Center. [doc. 6] Plaintiff is

apparently illiterate.  His fellow inmates have assisted him in drafting the instant complaint

which, although somewhat difficult to decipher, apparently alleges the following claims for

relief. (1) FPDC offers no educational programs; (2) insufficient recreation yard for LDOC

inmates; (3) no "indigent;" (4) kitchen workers are not "clean shaved;" (5) inmates are rushed out

of the kitchen; (6) no cleaning supplies; (7) inmates are provided "sack lunches" on weekends;

(8) guards talk "poorly" to the inmates; (9) guards dispense medication to the inmates;

(10) plaintiff "washed clothes for work release for free;" [doc. 1-1, paragraph IV]; (11) "box

broken into;" (12) plaintiff sleeps on the floor; (13) laundry is not sanitary; (14) there are  no

guards in the dormitory and only one guard in the control room and consequently the inmates

fight, steal, engage in homosexual activity, and engage in "strong arming" fellow inmates; and,

(15) the Warden disposed of a law book. [doc. 1-1, p. 4][1]

In an "amended complaint" – an equally indecipherable 5-page handwritten document

filed on October 17, 2007 – plaintiff alleged claims similar to those raised in the original

complaint.  In addition he alleged that (1) officers put inmates in the cold lock down cell without

clothes for punishment; (2) other inmates have stolen plaintiff's property; (3) overcrowded

conditions; (4) no free coffee in the kitchen; (5) the warden's nephew controls the dorm's TV set;

---

[1] Plaintiff has also made additional allegations that are incomprehensible. See doc. 1-1, p. 5. Plaintiff seems to renew his complaint about a guard (Officer McMurray) being unqualified to dispense medication to inmates. The remaining allegations are indecipherable.

(6) only one ice chest; (7) guards read inmates' legal mail; (8) plaintiff got blood on him while working in the laundry and wants to have an AIDS test; (9) no free razors provided; (10) only one biscuit and jelly provided for breakfast; (11) only fifteen minutes of outdoor recreation permitted; (12) plaintiff was wrongfully induced to plead guilty to an offense he did not commit; (13) plaintiff's personal property was lost during transfer; and, (14) prison authorities monitor out going mail.  At the conclusion of this rambling missive plaintiff asked for an early release or transfer to Bossier Parish and $1000. [doc. 7, pp. 1-5]

In addition, plaintiff provided an Inmate Commissary price sheet and order form.  [doc. 7, pp. 6-8]

### *Law and Analysis*

#### *1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

3

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint recites the facts relied upon to support his specific theories of liability.  Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that the plaintiff's claims are frivolous.

## 2. Juridical Person

Plaintiff has named the Franklin Parish Detention Center as the sole defendant.  Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Thus, Louisiana law governs whether FPDC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must

qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

FPDC is apparently a parish corrections facility operated by the Sheriff of Franklin Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also,  *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)] As such, it is not a "juridical person" and plaintiff cannot maintain suit against this entity.

### 3. Conclusory Allegations

Plaintiff's complaint supplies, at best, only conclusory allegations of fault.  These conclusory allegations are insufficient to establish liability pursuant to §1983.  See *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir.2002); *Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir.1987); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

### 4. Individual Allegations

Plaintiff need not be afforded the opportunity to amend his complaint to cure the defects noted above. This is so, because each of plaintiff's conclusory allegations have been examined and found wanting, as shown hereinafter:

(1) FPDC offers no educational programs – The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759,

5

762 (5th Cir.1988). Plaintiff's claim to the contrary is frivolous.

(2) Insufficient recreation yard for LDOC inmates;   (3) No provision for "indigent" supplies; (4) Kitchen workers are not "clean shaved" and (5) inmates are rushed out of the kitchen (6) No cleaning supplies,  (7) inmates are provided "sack lunches" on weekends, (12) plaintiff sleeps on the floor and  (13) laundry is not sanitary; and Amended Complaint, Claims (3) overcrowded conditions; (4) no free coffee in the kitchen; (5) the warden's nephew controls the dorm's TV set; (6) only one ice chest; (8) plaintiff got blood on him while working in the laundry and wants to have an AIDS test ; (9) no free razors provided; (10) only one biscuit and jelly provided for breakfast; (11) only fifteen minutes of outdoor recreation – While the Constitution does not mandate comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require prisoners be afforded "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Encompassed within the notion of "humane conditions of confinement," are assurances that prisoners will receive adequate food, shelter, clothing and medical care, and that prison officials will "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832(quoting, *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). In order to state a claim under the Eighth Amendment for unconstitutional conditions of confinement, the plaintiff must satisfy both a subjective and objective component. First, the objective requirement necessitates that the inmate allege a sufficiently serious deprivation. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)(emphasis added). A sufficiently serious deprivation is one which denies the inmate "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101

S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Only such deprivations are sufficiently grave to constitute cruel and unusual punishment. *Id.* Second, the subjective requirement necessitates that the prison official must have acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citations omitted). A prison official's culpable state of mind is measured by deliberate indifference which is defined as knowing and disregarding an excessive risk to inmate health or safety. *Id.* Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.2d 286, 292 (5 Cir.1997); *Farmer*, 511 U.S. at 838-840. Accordingly, negligence and even gross negligence does not implicate the Constitution and does not provide a basis for a § 1983 claim. *Farmer*, 511 U.S. at 835 (citing, *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)).

As previously stated, a conditions of confinement claim must satisfy tests for both objective and subjective components. However, the subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of any minimal civilized measure of life's necessities. *Davis v. Scott*, 157 F.3d 1003, 1006 (5 Cir.1998)(emphasis added). The conditions of confinement complained of simply do not demonstrate an extreme deprivation of life's necessities. These claims are frivolous.

(8) Guards talk "poorly" to the inmates – Allegations of verbal abuse by prison guards do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997.) Plaintiff's claim is frivolous.

(9) Guards dispense medication to the inmates – To establish liability under § 1983, a civil rights plaintiff must establish two elements: (a) state action, i.e., that the conduct

complained of was committed under color of state law, and (b) a resulting violation of federal law, i.e., that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. See *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); see also *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002). Through this claim, plaintiff has done neither; this claim is also frivolous.

(10) Plaintiff "washed clothes for work release for free" – Prisoners have no constitutional right to be paid for work performed in prison. *Wendt v. Lynaugh*, 841 F.2d 619 (5th Cir.1988), cited in *Rochon v. Louisiana State Penitentiary Inmate Account*, 880 F.2d 845, 846 (5th Cir. 1989). As the United States Fifth Circuit Court of Appeals has noted: "Compelling an inmate to work without pay is not unconstitutional. The Thirteenth Amendment specifically allows involuntary servitude as punishment after conviction of a crime, and this Court has held that compensating prisoners for work is not a constitutional requirement but, rather, is by the grace of the state." *Murray v. Mississippi Department of Corrections*, 911 F.2d 1167, 1167-68 (5th Cir.1990) (citations and quotation marks omitted); see also *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir.2006).  Plaintiff's wage claim is frivolous.

(11) "Box broken into;" and Amended Complaint Claims (2) plaintiff's property was stolen  and, (13) plaintiff's personal property was lost during transfer – Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated.  If no constitutional violation has been alleged, there

is no cognizable claim under §1983.  The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law."  However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981),  a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law.  The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts.  *Id.*  Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy.  *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).  This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible.  *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that both intentional and unintentional, random, and unauthorized deprivations occurred when unspecified items of his personal property were lost and stolen.  Therefore, if adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or intentional torts committed by employees of the prison facility.  See, La. Civil Code, Article 2315.  This provision of state law, which is the general tort provision of Louisiana's Civil Code, provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine.  His lost/stolen property claims are frivolous.

(14) There are  no guards in the dormitory and only one guard in the control room and consequently the inmates fight, steal, engage in homosexual activity, and engage in "strong arming" fellow inmates; and Amended Complaint, Claim (1) officers put inmates in the cold lock down cell without clothes for punishment–  Article III of the Constitution restricts federal court jurisdiction to questions arising from a "case or controversy." To seek relief in federal court a plaintiff must show that he suffered from a threatened or actual injury caused by the allegedly illegal actions of the defendant. *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Smith v. Price*, 616

F.2d 1371 (5th Cir. 1980).  In other words, "... the plaintiff  generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. at 499.  Plaintiff has not shown either threatened or actual injury to himself and he has no right to assert the threatened or actual injury allegedly sustained by his fellow inmates. Plaintiff's claim is clearly frivolous.

(15) The Warden disposed of a law book ; and Amended Complaint Claims (7) guards read inmates' legal mail and (14) prison authorities monitor out going mail – To the extent that plaintiff implies that this act of the Warden and the guards amounted to a denial of plaintiff's right of access to the courts, it fails to state a claim for which relief might be granted.  The "right of access" to the courts insures "inmate access ... [that] is adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  The right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. Meaningful access is insured through adequate law libraries or "alternative means to achieve that goal." *Id.* at 830; *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" (internal quotation marks omitted));  *Cruz v. Hauck*, 515 F.2d 322, 331 (5th Cir.1975) ("access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State[;] ... [t]he alternatives open to the State are legion."). "Right of access" has also been defined as "a reasonably adequate opportunity to file nonfrivolous legal claims challenging" or

11

"the capability of bringing contemplated challenges to" convictions, sentences or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). This right is not, however, unlimited (see *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997)); and, is subject to appropriate limitations, *id.* at 311-12; *Hudson v. Palmer*, 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("[t]he curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities"), which are reviewed with an eye toward judgment calls regarding prison management which are best left to the wide discretion and expertise of prison administrators, *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). There is no litmus test by which the quality of legal materials made available can be judged.

In any event a plaintiff alleging a denial of his right of access "must demonstrate an actual injury stemming from defendants' unconstitutional conduct." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999). A deficient or non-existent law library is not in and of itself grounds for relief absent a consequential failure to obtain redress from a court. *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir.2001); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998).

Plaintiff has not shown that the act of the Warden in discarding one law book resulted in a denial of access to the courts and therefore this claim is frivolous.  Further, he has not shown how the acts of the guards with respect to incoming and outgoing mail have resulted in the violation of his right of access to the courts. All of plaintiff's "access to courts" claims are clearly frivolous.

(12) Plaintiff was wrongfully induced to plead guilty to an offense he did not commit –

12

The final claim raised in plaintiff's amended complaint cannot fairly be attributed to the FPDC or its staff.  Furthermore, to the extent that plaintiff seeks his immediate release from incarceration, he is advised that such relief is not available by way of a civil rights action.   See *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir.1997); *Cook v. Texas Dept. of Criminal Justice Planning Dept.*, 37 F.3d 166, 168 (5th Cir.1994) (holding that a § 1983 action is appropriate for recovering damages resulting from illegal administrative procedures, but *habeas* is the appropriate federal remedy for a state prisoner challenging the fact of his confinement). "A *habeas* petition ... is the proper vehicle to seek release from custody." *Carson v. Johnson*, 112 F.3d at 820. "[I]n instances in which a petition [or complaint] combines claims that should be asserted in *habeas* with claims that properly may be pursued as an initial matter under § 1983, and the claims can be separated, federal courts should do so, entertaining the § 1983 claims." *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir.1987).  Plaintiff complains that he has been unlawfully imprisoned pursuant to false charges; therefore,  he is raising claims which challenge the validity of prior state court criminal proceedings and such claims must be raised as habeas corpus claims pursuant to the appropriate provisions of Title 28.  See *Calderon v. Ashmus*, 523 U.S. 740, 747, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) ("[A]ny claim by a prisoner attacking the validity or duration of his confinement must be brought under the *habeas* sections of Title 28 of the United States Code."); *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that when an inmate challenges the very fact or duration of his confinement and the relief he seeks is immediate or speedier release, "his sole federal remedy is a writ of *habeas corpus*").   In short, plaintiff's claims of actual innocence cannot be addressed in this civil rights complaint.

13

**5. Conclusion**

Plaintiff's conclusory complaint, naming a single non-juridical person as defendant is subject to dismissal as frivolous.  Furthermore, the individual claims raised in the complaint are frivolous. Thus, amendment of the complaint would not cure these deficiencies.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 31st day of October, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

14